1   RONALD K. LOSCH - #98170
    MARK R. MEYER - #238231
2   Losch & Ehrlich - Attorneys at Law
    425 California Street, Suite 2025
3   San Francisco CA 94104
    Telephone:    (415) 956-8400
4   Facsimile:    (415) 956-2150
    Email:        rl@losch-ehrlich.com
5
    Attorneys for Plaintiff
6   IMC Investment Group FE Winery, LLC

7

8                   UNITED STATIES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10  IMC Investment Group FE Winery, LLC;          Case No.

11                    Plaintiff,                  COMPLAINT FOR

12            v.                                  1. Breach of Written Contract
                                                     (Operating Agreement)
13  Fairwinds Estate, LLC;                        2. Breach of Written Contract
    Criswell Radovan LLC;                            (Services Agreement)
14  Robert Radovan aka Rob Radovan;               3. Breach of Duty of Loyalty
    William Criswell aka Bill Criswell;           4. Breach of Duty of Care
15  Lisa Pacey aka Lisa Pacey-Willis; and         5. Fraud
    Heather Hill                                  6. Unfair Business Practices
16                                                7. Declaratory Relief
                    Defendants.                   8. Accounting
17
    Fairwinds Estate Winery, LLC                  JURY TRIAL DEMANDED
18
                    Nominal Defendant.
19

20

21  IMC Investment Group FE Winery, LLC ("IMC") alleges:

22                          **The Parties**

23  1.  This action concerns the membership and management of nominal defendant Fairwinds Estate

24      Winery, LLC ("FEW" or the "Company").

25  2.  The named members of the Company are:

26              a.   Plaintiff IMC Investment Group FE Winery, LLC ("IMC"), a Nevada limited

27                   liability company with an LLC member and sub-members Brandon Chaney and

Anthony Zabit.  At the time of filing, Brandon Chaney and Anthony Zabit are residents of Nevada and Florida.

    b.  Defendant Fairwinds Estate, LLC ("FE"), a Nevada limited liability company with members Defendant Robert Radovan and the Criswell Revocable Trust dated March 14, 2014, Defendant William T. Criswell and Sharon L. Criswell, Trustees.  At the time of filing, the members and any sub-members or FE are believed to be residents of California.  Defendant Criswell Radovan, LLC ("CR") formed FE for the purposes of holding its interest in the Company.

    c.  Defendant Criswell Radovan, LLC ("CR"), a Nevada limited liability company believed to have as members Defendant Robert Radovan and the Criswell Revocable Trust.  At the time of filing, the members and any sub-members or CR are believed to be residents of California.

3. Plaintiff IMC and Defendant FE are the named sole members of the Company, FEW.

4. The Company, FEW, is a manager-managed LLC.  At the formation, Brandon Chaney and Defendant Robert Radovan were appointed as Managers.

5. Defendants Lisa Pacey and Heather Hill are individuals, employees and agents of Defendants CR, FE, Robert Radovan, and William Criswell, and are residents of California.

**Summary of Allegations**

6. Defendants committed fraud and misrepresentations in connection with the formation and operation of the Company.  Defendants breached the Company Operating Agreement, their Duty of Loyalty, and their Duty of Care in a multitude of ways.  As a result, the Company defaulted on loans, is subject to penalty interest rates, has had its credit damaged, is subject to being foreclosed upon, and requires additional capital in order to maintain day-to-day operations.  Plaintiff IMC has had to contribute again and again to keep the Company operating and been forced to take over management.  Even so, Defendants are currently interfering with the operation of the Company in the hopes that Plaintiff IMC will be forced into a quick sale below market value to satisfy debts of other troubled and mismanaged projects of the Defendants.

**Jurisdiction**

7. Pursuant to 28 USC § 1332, this court has jurisdiction over the action because it is between citizens and Limited Liability Companies of different states and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.  An LLC is a citizen of every state of which its owners/members are citizens.  *Johnson v. Columbia Properties Anchorage, LP* 437 F.3d 894, 899 (9th Cir. 2006).

**Intradistrict Assignment**

**8.** This action should be assigned to either the San Francisco or Oakland division of this court because the action arises from operation of property and events taking place centered in Napa County.

**GENERAL ALLEGATIONS**

9. In early 2015, the individual members and managers of Plaintiff IMC, including Brandon Chaney and Anthony Zabit, discussed with Defendant Robert Radovan the potential for investment in certain property at 4550 Silverado Trail North, Napa, Napa County, California, including the operation of the equipment and business located at that property (the "Property" or the "Winery").

10. The Property consists of land, buildings, and equipment that are used as part of a winery business.  The Winery produces wine and provides services to customers, including storage and production of wine.

11. Defendant Robert Radovan represented that he had connections in the industry to bring in new clients; he had connections necessary to finance and refinance the Property; and that he could and would run the financial operations of the Winery, such as managing accounts, overseeing billing and payment of expenses, producing financial statements, and so forth.  It was later revealed that none of these representations were true.

12. The parties agreed to form an LLC to purchase the Property.

13. In consideration for investing $2,000,000—100% of the equity capital to purchase the Property—the parties agreed that an entity or entities owned by Brandon Chaney and Anthony

Zabit would receive a 60% interest in the new LLC.

14. In consideration for finding the Property, providing accounting and management of the Property, finding new custom customers through their Napa Valley relationships, sales connections and outlets, and committing to obtain and provide any additional capital required to operate the Property, the parties agreed that an entity or entities owned or controlled by Defendants Robert Radovan and William Criswell would receive a 40% interest in the new LLC.

15. In early February 2015, the parties acted quickly to form business entities necessary to complete the purchase.  The relevant documents were drafted by Defendant Robert Radovan and his counsel with the promise that subsequent documents would be signed to reflect the agreements of the parties.

16. On February 4, 2015, Defendant Robert Radovan filed Articles of Organization for Defendant Fairwinds Estate, LLC ("FE") with the Secretary of State of the State of Nevada, naming Defendant Robert Radovan as manager and providing an address in St. Helena, California.

17. On February 12, 2015, Defendant Robert Radovan filed Articles of Organization for Fairwinds Estate Winery, LLC ("FEW") with the Secretary of State of Nevada.

18. On February 26, 2015, Fairwinds Estate Winery, LLC ("FEW") registered with the State of California to do business within the State.

19. Unknown and not disclosed to Plaintiff IMC, Defendants learned of the Property from broker and consultant Simon Kechloian.  The broker had obtained a contractual right to purchase the Property.  In order to obtain the ability to purchase the Property, Defendant Robert Radovan promised Simon Kechloian a broker's fee, ownership, a General Manager position at the Company and profit sharing in the Winery.  Defendant Robert Radovan did not reveal these facts to Plaintiff.

20. In early March 2015, Plaintiff IMC deposited $500,000 in earnest money for the purchase of the Property based on Defendant Robert Radovan's representations that he had a purchase agreement from the seller of the Property which included the outstanding Accounts Receivable, and obtained approval from Comerica Bank for a loan at 80% of the Property value, plus an accounts

receivable line to cover working capital and some investment in the Property. On information and belief, Defendants Robert Radovan and William Criswell concealed their poor credit worthiness. The loan was not approved and neither was a loan sought from an alternative lender, Umpqua. Plaintiff IMC nearly lost its earnest money and the purchase had to be financed through a hard money lender, Tebo Napa, LLC ("Tebo"), at significant upfront fee and higher interest cost. At the time, Defendants Robert Radovan and William Criswell represented that Comerica and Umpqua declined to lend simply because they were not interested in lending to a winery business. On information and belief, Defendants Robert Radovan and William Criswell concealed that the true reason for the bank's declining to lend was the poor creditworthiness of Defendants Robert Radovan and William Criswell.

21. On April 1, 2015, FEW purchased the Property. Shortly afterward, Brandon Chaney provided an Operating Agreement with changes to reflect the agreement between him and Defendants Robert Radovan and William Criswell. On or about August 17, 2015 Defendant Robert Radovan, as Manager of FE, finally executed the replacement Operating Agreement.

22. Upon formation of the Company, Plaintiff IMC invested $2 million in the Company upon assurance that Defendant FE would fund additional capital as needed.

23. Defendant FE breached its commitment to be responsible for additional working capital almost immediately. Plaintiff IMC was required to put an additional $100,000 into the business. Since that time Plaintiff IMC has required to provide at least $686,000 of additional capital to the Company totaling over $786,000.

24. Defendant Robert Radovan represented he had a long standing business relationship with RaboBank. After closing, when the Company attempted to replace the Tebo loan with a loan from RaboBank, the loan approved by RaboBank was not enough to fully satisfy the Tebo loan. Again, Defendants Robert Radovan and William Criswell concealed that their own lack of creditworthiness would make obtaining loans from a traditional lender difficult or impossible. Being unable to fully pay off the Tebo loan the interest expense of the Company increased and substantially added risk to Plaintiff IMC's investment in the Company.

25. In connection with obtaining the loan from RaboBank, Defendants Robert Radovan and William Criswell asked Plaintiff IMC to lend the Company $225,000 for a couple of weeks.  On June 22, 2015, by email sent from Defendant Heather Hill to Brandon Chaney, Defendants represented the loan would facilitate closing of a loan from RaboBank by meeting RaboBank's requirement of deposited funds and the funds would not be used.  She wrote, "We need $225k wired ASAP in order to close the loan; we won't use it but they want to see it in there.  Once it is closed and clear we will send it back to you."

26. In reliance upon this representation, Plaintiff IMC arranged for a transfer of $225,000 to the Company in early July 2015.

27. After the loan from RaboBank was closed—instead of returning the money—Defendants represented the money was needed to pay money due under the loan by Tebo.

28. The note between the Company and Tebo required a $190,000 principal payment on August 10, 2015.  If this amount was not paid, the note would be in default and the interest rate would increase from 12% to 18%.

29. Contrary to their representations, Defendants did not pay Tebo, causing a default.

30. Instead, Defendants distributed money to themselves.  On August 3, 2015, Defendants paid from Company bank accounts to Defendants the amounts of $28,000, $45,000, $28,000, $45000.  On August 26, they paid $20,000.  In addition, Defendants were making payroll payments to Defendants Heather Hill and Lisa Pacey contrary to the Operating Agreement and without the required approval by Plaintiff IMC.  Defendants paid themselves while Plaintiff and its affiliates had invested well over $2 million with no return of any funds.  Defendants paid themselves after promising that a loan of $225,000 would be paid back in just a couple weeks.

31. At about the same time, around August 12, 2015, Brandon Chaney requested to have more involvement in the management and review of bookkeeping.  Defendants dismissed him and put him off.  Defendants did not provide access to the bookkeeping as a means to conceal what they had been doing.

32. Because Defendants paid themselves, funds were not available to pay the Tebo Note in August

1  2015, causing a default of the loan agreement, and Defendants were not able to make timely

2  payments to RaboBank.

3  33. By December 2015, both the Tebo note and the Rabobank loan were in default.  As a result, a

4  default interest rate was applied to the Tebo note, subjecting the Company to over $30,000 in

5  additional interest charges and risking the Property to foreclosure.  Additionally, Tebo paid the

6  mortgage payment to RaboBank loan on behalf of the Company to protect its interest in the

7  Property and prevent RaboBank from foreclosing on the Property.  The RaboBank loan has since

8  then been placed in the "workout group," damaging the Company's reputation and credit and

9  subjecting the Property to foreclosure by both RaboBank and Tebo.

10  34. Defendants also actively concealed and misrepresented that they distributed money to

11  themselves.  For example, Brandon Chaney specifically asked if Defendants had paid themselves

12  back any funds.  On January 2, 2016, Defendant Robert Radovan by text message to Brandon

13  Chaney falsely represented that the Company has not paid Defendants back had *any* money.

14  35. The lack of funds available to pay Tebo and Rabobank were also caused by Defendants' Heather

15  Hill's, Lisa Pacey's, Robert Radovan's and William Criswell's intentional, reckless, and

16  fraudulent management of the Company.

17  36. Defendants completely failed to address billing or vendors.  Such conduct specifically included

18  but was not limited to:

19      a.  Failure to track or pay vendors.  As a result, vendors have refused to provide further

20         services to the Company, liens have been placed on the Winery, and business

21         property repossessed from the Winery in front of employees and clients.

22      b.  Failure to record outbound checks in the QuickBooks accounting system.

23      c.  Failure to reconcile bank accounts in the accounting system.

24      d.  Failure to invoice or bill customers. Customers reported that they had never been

25         billed and were asking for invoices.  Upon inquiry to Defendants Heather Hill and

26         Lisa Pacey, Defendants were unable to produce the invoices they allegedly provided

27         these clients and invoices had to be created or re-created from scratch.

Complaint - Case No.                                                                                           7

e.   Failure to apply customer checks to customer accounts in the accounting system.

37.   As a result of these failures:

   a.   The Company did not collect money due from clients, and was left unable to track and collect receivables.

   b.   The Company is currently owed and unable to collect an estimated 6 months of receivables.

38.   Based upon the current status of review, it is estimated that the Company would have had $489,000 more in cash if billing done correctly.  The Company would have had sufficient funds to avoid defaults with its lenders (had basic accounting functions been implemented).

39.   Defendants have committed wrongful conduct in connection with the company's lenders, RaboBank and Tebo.  Such conduct included but is not limited to Defendants' failure to:

   a.   Timely pay loan installment payments to the Company's lender, RaboBank and Tebo. For several months, payments were not timely made.  In December 2015, the Company did not make any payment.  As a result, in December 2015, Tebo made the December 2015 payment to cure the Company's default.  Tebo was not paid as well causing a default and penalties.

   b.   Respond and provide truthful information to RaboBank upon request.  The loan with RaboBank requires the Company to provide financial statements.  Defendants, including Heather Hill and Lisa Pacey, were not accurately tracking income, accounts receivable, or expenses.  So, the accounting system was unable to produce reliable financial statements.  When RaboBank demanded that the Company provide financial statements, Heather Hill and Lisa Pacey provided excuses and delayed.  They eventually provided Profit and Loss statements that were not based upon any accurate recordkeeping.  They knew the statements were false.  For example, on November 30, 2015 at about 2:40 p.m. Lisa Pacey send an email to Samantha Foster of RaboBank and Brandon Chaney that attached a purported Profit and Loss Statement for the time period from purchase of the Property through September 2015.  The statement was

1    sent despite knowing that it was not an accurate representation of the Company's

2    financial condition.

3    c.   In connection with the loan from RaboBank, Defendant Robert Radovan represented

4    that the Tebo loan was preferred equity and would have a maturity date equal or

5    longer than the term of the RaboBank note.  This representation not true.   RaboBank

6    stated it would not have loaned funds if it had known the truth.

7    40. The Company's position with the lender was damaged as result of these defaults and

8    misrepresentations and the RaboBank may take action against the Company in its discretion.

9    41. Defendants mismanaged the Company in connection with employees.  Such mismanagement

10   included but is not limited to:

11   a.   Failure to timely communicate with and attend to employees.

12   b.   Instructing Todd Heth, the Company's winemaker, not to listen to Brandon Chaney

13   and repeatedly undermined his authority and ability to manage the Company.

14   c.   Failure to pay for Company health insurance.  The Company received a final

15   cancelation notice for the health insurance due to lack of payment for three months.

16   In early 2016, Blue Cross stated that if the Company did not pay more than $30,000,

17   the Company's health insurance coverage will be retroactively cancelled.

18   d.   Failure to report or pay payroll taxes withheld from employees.  Their practice

19   appears to have been to occasionally "manually" write checks to employees, but not

20   pay taxes due at that time.  Then, when more funds were available, go back and make

21   up the failure to pay taxes.

22   e.   Failure to properly prepare payroll.  The Company's employees have complained that

23   W-2 statements do not match their income for 2015 and, on information and belief,

24   this resulted from the mismanagement and wrongful conduct in deducting but not

25   paying employee taxes.

26   f.   Failure to pay Worker's Compensation insurance premiums resulting in the expiration

27   of the policy in December 2015.  Plaintiff IMC was not informed of this situation.

When Plaintiff IMC learned of the situation it took action to provide additional capital to the Company and took steps to immediately get the policy retroactively reinstated.

42. Defendants paid out funds from the Company without the required approval by Plaintiff IMC and in violation of the Operating Agreement.

    a.  Defendants paid Defendants Lisa Pacey and Heather Hill, employees of Defendant CR, from the Company payroll.  Defendants assured IMC that diversion of payroll funds was not occurring.

    b.  Defendants charged the Company's account based upon time spent by Defendants Lisa Pacey and Heather Hill, employees of Defendants FE and CR.

    c.  On information and belief, Defendants FE and CR have double-booked the salary expenses of Defendants Lisa Pacey and Heather Hill on multiple unrelated projects. Defendants are involved in several properties and developments and Defendants Lisa Pacey and Heather Hill spend the majority of their time on other operations.

    d.  Defendants paid Defendants FE and CR from Company accounts.  Further, Defendants denied their conduct after the fact as part of an effort to convince Plaintiff IMC to sell its interest in the Company.

    e.  On information and belief, Defendents have hosted parties and business dinners at the Property for personal use and the promotion of other Defendant CR business and charged the expenses to the Company.

    f.  On information and belief, Defendants have deposited customer payments into Defendant FE's bank accounts, converting Company funds.  This was enabled by Defendants placing permits, licenses, and customer agreements in the name of FE.

43. As Defendants were breaching the Operating Agreement, mismanaging the Company, and putting the Company into default on the Company's loans, Defendants were becoming desperate for money.  On information and belief, Defendants have several other projects and have claims against them in connection with those projects in amounts believed to be well in excess of

Complaint - Case No.                                                                                                     10

$5,000,000.  In an effort to generate cash for their other projects and debts, Defendants have attempted to sell the Company assets:

    a.  In September 2015, Defendants suggested they wished to buy-out Plaintiff IMC's interest while concealing the fact a buyer was interested in purchasing the Property. Plaintiff IMC indicated that it desired to move forward and grow the business.

    b.  Without informing Plaintiff IMC, Defendants negotiated a sale of the Winery.  On October 30 2015, Defendant Robert Radovan signed a "letter of intent" "intended to create a binding agreement" for FEW to sell the Property.  Defendant Robert Radovan signed this agreement in violation of the Operating Agreement which states that selling the Property is a Major Decision that requires the approval of Plaintiff IMC.

    c.  On January 3, 2016, Defendant Robert Radovan did it again.  He signed another "letter of intent" "intended to create a binding agreement" for the Company to sell the Property.  This time for a much reduced price, 20% less than the first LOI.  Again, Defendant Robert Radovan signed this agreement in violation of the Operating Agreement.

    d.  Despite wanting to purchase Plaintiff IMC's interest in the Property just a few months earlier, now the Defendant Robert Radovan claimed the second LOI was the best possible outcome for the Company in light of the cash flow problems and defaulted loans.

44. In the final months of 2015, Plaintiff IMC learned that Defendants were defaulting on loan obligations, Plaintiff IMC was being asked to contribute more funds to continue Company operations and started to try to evaluate the Company's finances and review its financial statements to consider the possibility of offers to purchase the Property.

45. Plaintiff IMC and its members are experienced in connection with offers from private equity investors and knew that any buyer would need to see reliable financial statements.  Unless the Company's financial statements were complete and reliable, the Property could not be sold at

full value.

46. When Plaintiff IMC discovered the egregious mismanagement of the Company and the lack of any reliable financial statements, Plaintiff IMC sought to take over the accounting and financial management.  In mid-January 2016, Plaintiff IMC started the process of obtaining control of bank accounts, obtaining Defendants' incomplete accounting, and instituted new procedures.

47. Defendants have not cooperated:

    a.  Defendants only turned over copies of about 50% of the vendor invoices to Plaintiff IMC.  Defendants did not provide vendor files in an organized or comprehensible manner.  In fact, most invoices were found in a pile of unopened mail.  Plaintiff IMC was required to recreate a database of vendor information, invoices, and amounts due from reviewing all records and having to contract vendors for additional documents.

    b.  The financial system Defendants turned over was so incomplete as to be useless.  The entries were incomplete and unreliable, requiring Plaintiff IMC to review all past transactions and create and implement a completely new financial system at great time and expense.

    c.  Defendants delayed transfer of the bookkeeping data and systems.

    d.  Defendants refused to allow full access to the payroll system.

    e.  Defendants instructed employees not to cooperate.

    f.  Plaintiff IMC had to set up a new payroll system to pay employees.

    g.  Defendants instructed staff not to forward Company vendor invoices to Plaintiff IMC for processing.

    h.  Defendants instructed legal compliance consultants not to cooperate with the Company.

48. During 2015, Defendants were responsible for obtaining the governmental permits and approvals necessary for the Company to operate as a winery and produce wine for clients.  Defendants requested Plaintiff IMC and Brandon Chaney to provide information for the application and Mr. Chaney did so.  However, Brandon Chaney's information was not used or ever sent to the

compliance consultant.  If fact, the compliance consultant had no idea Brandon Chaney was a manager or represented the majority interest in the Property.  Without informing Plaintiff IMC or Mr. Chaney, Defendants applied for all governmental licenses, permits, and bonds *in the name of FE*, an entity that Defendants had sole control of.  Furthermore, Defendants represented to governmental agencies and the compliance consultant that the Company was soley a landlord and had leased the winery property to FE for the purposes of conducting the business of the winery.  Defendants even sent to the compliance consultant an unexecuted lease to make their story believable.  These false representations have allowed Defendants to improperly gain exclusive control over, and interfere with, key aspects of the winery business.

49. Also during 2015, Defendants were responsible for entering into contracts with clients. Defendants placed all contracts *in the name of FE*, and not that of the Company.

50. In late January 2016, Defendants were again requesting that Plaintiff IMC provide more funds to the Company to pay ongoing expenses.  Defendants refused to contribute any more funds to the Company.

51. Plaintiff IMC refused to do so without additional assurances and control over the financial and day-to-day operations of the Company.

52. Accordingly, in an effort to protect the Company and Plaintiff IMC's interests, on or about January 22, 2016, Plaintiff IMC and Brandon Chaney presented Defendants with several documents to be discussed and signed:

    a.  Plaintiff IMC requested, and Defendants agreed to, a restated Operating Agreement providing Plaintiff IMC with greater control over the Company and the ability to issue additional interests as necessary.

    b.  Plaintiff IMC requested, and Defendants agreed to, a "Services Agreement" related to the governmental approvals necessary to operate as winery.  Defendants agreed that the Winery Permits were obtained with Company funds, that the Winery Permits were for the use of the Company; that the parties would apply to the necessary governmental agencies to amend or issue new permits to be placed in the name of the

Company; and that all operations related to the Winery Permits would be conducted by the Company.

 c. Plaintiff IMC requested, and Defendants agreed to, secure all of Plaintiff IMC's contributions to the Company in the form of promissory notes secured by the Company's assets.

53. Subsequently, Defendants continued to interfere with Plaintiff IMC's investigation into the financial condition of the Company.  Defendants continued to refuse to participate in supplying the Company with additional capital needed to operate.  And Plaintiff IMC continued to learn of egregious mismanagement of the Company, including the failure to pay vendors and failure to properly bill clients.

54. On February 19, 2016, pursuant to the Operating Agreement, the Company issued additional membership interests to Plaintiff IMC based upon the additional contributions it provided to the Company over and above the initial $2 million.  As provided for in the Operating Agreement, the Issuance was based upon the additional contribution of an existing member and was approved by members holding 60% of the membership interests in the Company.

55. On February 19, 2016, Brandon Chaney a manager of Plaintiff IMC, pursuant to the Operating Agreement, notified Defendants that the Company was in default in the note with Tebo, and provided further Notice that additional capital was needed in order to fulfill the objectives of the Company.  Plaintiff IMC advised Defendants that if Defendant FE is unable or unwilling to contribute additional capital or obtain reasonable third party financing to address the default, Plaintiff IMC may act to protect its interest in the Company through making additional capital contributions or independently acquiring the promissory note.

56. On February 22, 2016, Plaintiff IMC notified Defendants that Defendants Robert Radovan and FE were in breach of the Operating Agreement, including but not limited to, Articles, 4.3, 4.5.1, 4.6, 4.7, 6.4, 7.3, 7.4, 8.1, 9.1.3, 9.7, 9.7.9, 9.7.11, 9.7.13, and 17.21, and requested the immediate removal of Defendant Robert Radovan as a Manager of the Company.  Plaintiff IMC requested that if the parties could not agree to the removal of Defendant Robert Radovan, the

parties should immediately resolve their disputes according to Article 15 of the Company's Operating Agreement, which called for mediation.

57. On February 23, 2016, Defendants refused to provide additional capital to the Company. Instead, Defendants demanded that Plaintiff IMC agree to approve to sell the Company. Defendants also asserted that Plaintiff IMC could not protect its investment in the Company through the purchase of the Tebo note.

58. On February 29, 2016, Defendants refused to relinquish management or the Company, and refused to mediate disputes.  Instead, Defendants demanded that Plaintiff IMC immediately consent to sale of the Company.

59. Thereafter, Defendants, including Defendant Robert Radovan, have continued to interfere with the operation of the Company and its employees' work.  For example:

    a. In order for the Company to operate and provide services to its clients, it needs to comply with various reporting and other regulatory requirements of the California Department of Alcoholic Beverage Control ("ABC") and the federal Alcohol and Tobacco Tax and Trade Bureau (TTB).

    b. As part of this process, the Company relies upon an expert consultant, non-party Anna Mekjian-Carmichael of Compliance Associates.

    c. In the past, Defendants misrepresented to Compliance Associates that Defendant FE was the operator of the Winery and a lease existed and that the Company was only the landlord for the Property.  Defendants also placed contracts with clients in the name of Defendant FE rather than the Company.

    d. After Plaintiff IMC took over the financial management of the Company (e.g., paying past due invoices, billing clients, payroll, etc.), Defendant FE instructed Compliance Associates not to accept payments from the Company, and instructed Compliance Associates not to speak with Brandon Chaney or other employees of the Company.

    e. On March 3, 2016 at 10:39 AM, Anna Mekjian-Carmichael wrote:

        Robert,

May I please hear from you directly today regarding my role as the compliance consultant for Fairwinds Estate?

There are many aspects of the winery's compliance that are outstanding and require immediate attention.  In addition, I am distressed that I cannot assist Todd & the other Alternating Proprietors in their need for matters to be handled with the TTB and the ABC.

I only require 2 things to proceed:  payment of $4175 and definitive instruction from you as to who I am permitted to discuss winery business.  I have been instructed by Lisa not to discuss matters with Brandon Chaney nor to accept payment for the past due invoices.  And though he is willing to pay my past due invoices, I am respecting Lisa's and Heather's request that I wait for payment to come directly from you.

Please clear this matter up for me today so I can get back to work!

f.   Thus, although Brandon Chaney and Plaintiff IMC have been ready and willing to have the Company pay and work with the compliance consultant, Defendants have interfered and prevented the Company's ordinary business operations to continue.

g.   Without the ability to work the with compliance consultant, the Company will be irreparably harmed.  Services cannot be performed for clients, the clients will be harmed, clients are likely to discontinue hiring the Company, and word is likely to spread that the Company is unreliable, does not pay vendors, and cannot service clients.

h.   Similarly, Defendants placed all contracts with clients in the name of Defendant FE and *not in the name of the Company*.  Now, Defendants are preventing Company employees from managing these accounts.

i.   On March 3, 2016 at 11:29a.m., Defendant Heather Hill, an employee of Defendant CR, reasserted that FE was the holder of the governmental permits and prohibited Company employees from conducting the business of the Winery without their

involvement.

60. Defendants' recent conduct is not simply damaging to the Company. Defendants are purposefully interfering with the Company and putting the Company into default with lenders in order to pressure Plaintiff IMC to agree to sell the Company assets.

61. The Operating Agreement does not require either party to sell its interest. In fact, Plaintiff IMC's explicit approval is necessary for such a decision.

62. Defendants are in desperate need for funds on other projects and investments. Defendants are unable to pay their own employees. Defendants promised Simon Kechloian a piece of the Company and he is pressuring them. Defendants' need for immediate cash has made the Defendants willing to sell the Property below its long-run value. Defendants are using bad faith tactics in an attempt to pressure Plaintiff IMC to sell its interest.

63. Plaintiff IMC has put at risk over $2.7 million into the purchase of the Winery. Defendants' contribution, among other things, was to provide financial management. Defendants have not performed.

FIRST CLAIM

Breach of Written Contract (Operating Agreement)

Against Fairwinds Estate, LLC; Criswell Radovan, LLC; Robert Radovan; William Criswell

64. All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim. Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

65. Plaintiff IMC and Defendant FE entered into an Operating Agreement, including subsequent amendments or novations thereof.

66. The Operating Agreement has the terms as set forth in Exhibit A to this Complaint.

67. Plaintiff IMC has performed its obligations under the agreement and to the extent it has not performed in any way, it has been excused from doing so because of the prior breach by Defendants, unclean hands of Defendants, or because of the doctrine of estoppel.

68. Defendants FE and CR are alter egos and successors in interest to one another.

1    69. Defendants Robert Radovan and William Criswell are alter egos and successors in interest to

2          Defendants FE and CR.

3    70. Defendants directly and through their agents have breached the Operating Agreement including

4          the specific terms of the agreement and the covenant of good faith and fair dealing through the

5          conduct set forth above.

6    71. Further breach of the agreement will cause irreparable harm to Plaintiff IMC and the Company.

7    72. Plaintiff IMC has been harmed as a result.

8                                                    SECOND CLAIM

9                                    Breach of Written Contract (Services Agreement)

10           Against Fairwinds Estate, LLC; Criswell Radovan, LLC; Robert Radovan; William Criswell

11   73. All prior allegations are hereby incorporated by reference to the extent necessary to state a

12          Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be

13          pled in the alternative.

14   74. Plaintiff IMC, Defendant FE, and the Company entered into a Services Agreement.

15   75. The Services Agreement has the terms as set forth in Exhibit B to this Complaint.

16   76. Plaintiff IMC has performed its obligations under the agreement and to the extent it has not

17          performed in any way, it has been excused from doing so because of the prior breach by

18          Defendants, unclean hands of Defendants, or because of the doctrine of estoppel.

19   77. Defendants FE and CR are alter egos and successors in interest to one another.

20   78. Defendants Robert Radovan and William Criswell are alter egos and successors in interest to

21          Defendants FE and CR.

22   79. Defendants directly and through their agents have breached the Services Agreement including

23          the specific terms of the agreement and the covenant of good faith and fair dealing through the

24          conduct set forth above.

25   80. Further breach of the agreement will cause irreparable harm to Plaintiff IMC and the Company.

26   81. Plaintiff IMC has been harmed as a result.

27   ///

THIRD CLAIM

Breach of Duty of Loyalty

Cal. Corp. Code § 17704.09

Against All Defendants

82. All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

83. Plaintiff IMC and Defendant FE entered into an Operating Agreement, including subsequent amendments or novations thereof.

84. The Operating Agreement has the terms as set forth in Exhibit A to this Complaint.

85. Plaintiff IMC has performed its obligations under the agreement and to the extent it has not performed in any way, it has been excused from doing so because of the prior breach by Defendants, unclean hands of Defendants, or because of the doctrine of estoppel.

86. Defendants FE and CR are alter egos and successors in interest to one another.

87. Defendants Robert Radovan and William Criswell are alter egos and successors in interest to Defendants FE and CR.

88. Defendants Lisa Pacey and Heather Hill are employees of Defendants FE and CR who were directed by Defendants FE and CR to act on behalf of, and as agents of, the Company.

89. Defendants, as parties to the Operating Agreement, as Managers of the Company, as agents of the Company, owed the Company and its members, including IMC, a Duty of Loyalty under the common law and California Corporations Code section 17704.09.

90. Defendants directly and through their agents have breached their Duty of Loyalty to the Company and Plaintiff IMC through the conduct set forth above, including by failing to account and hold as trustee property, profits, and benefits derived from the Company and dealing with the Company as a person with an interest adverse to the Company.  The breaches include:

    a.   Concealing and misrepresenting facts regarding self-dealing by Defendants.

    b.   Paying Defendant employees through the Company payroll when not authorized to do

1        so.

2        c.   Trying to purchase the Plaintiff IMC's interest in the Company while concealing the

3             knowledge of a potential third party buyer and a verbal offer to purchase the

4             Company.

5        d.   When the attempt to purchase Plaintiff IMC's interest failed, negotiating the sale of

6             Company assets without the knowledge or approval of Plaintiff IMC.

7        e.   Signing agreements for the sale of Company assets without the knowledge or

8             approval of Plaintiff IMC.

9        f.   Using funds held by the Company to benefit Defendants over the interest of the

10            Company and Plaintiff IMC.

11       g.   Concealing and misrepresenting how funds supplied by Plaintiff IMC or its affiliates

12            would be used.

13       h.   Concealing and misrepresenting the financial status of the Company and the

14            management of the Company.

15       i.   Concealing and misrepresenting facts to governmental entities, consultants, and

16            Plaintiff IMC in order to place licenses or approvals in the name of Defendants rather

17            than in the name of the Company.

18       j.   Depositing Company funds into the bank accounts of Defendant FE.

19       k.   Mismanaging and interfering with the operations of the Company in order to pressure

20            Plaintiff IMC into selling its interest in the Company against its interest and based

21            needs particular to Defendants.

22       l.   Concealing the purposes for Defendants to seek to sell the assets of the Company.

23       m.   Interfering with Plaintiff IMC's ability to protect its interest in the Company's assets

24            by directing Tebo not to sell its promissory note and RaboBank not to consent to

25            Tebo to sell its promissory note to Plaintiff IMC.

26   91. As a result Plaintiff IMC and the Company have been harmed and injunctive relief is necessary

27       to prevent further irreparable harm.

---

Complaint - Case No.                                                                            20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FOURTH CLAIM

Breach of Duty of Care

Against Fairwinds Estate, LLC; Criswell Radovan, LLC; Robert Radovan; William Criswell

92. All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

93. Plaintiff IMC and Defendant FE entered into an Operating Agreement, including subsequent amendments or novations thereof.

94. The Operating Agreement has the terms as set forth in Exhibit A to this Complaint.

95. Plaintiff IMC has performed its obligations under the agreement and to the extent it has not performed in any way, it has been excused from doing so because of the prior breach by Defendants, unclean hands of Defendants, or because of the doctrine of estoppel.

96. Defendants FE and CR are alter egos and successors in interest to one another.

97. Defendants Robert Radovan and William Criswell are alter egos and successors in interest to Defendants FE and CR.

98. Defendants Lisa Pacey and Heather Hill are employees of Defendants FE and CR who were assigned to act on behalf of and as agents of the Company.

99. Defendants, as parties to the Operating Agreement, as Managers of the Company, as employees of the Company, owed the Company and its members, including Plaintiff IMC, a Duty of Care under California Corporations Code section 17704.09.

100.    Defendants directly and through their agents have breached their Duty of Care to the Company and Plaintiff IMC through the conduct set forth above, including by engaging in grossly negligent or reckless conduct, intentional misconduct, or knowing violations of law.

101.    As a result Plaintiff IMC and the Company have been harmed and injunctive relief is necessary to prevent further irreparable harm.

///

///

FIFTH CLAIM

Fraud

Against All Defendants

102.    All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

103.    Plaintiff IMC and Defendant FE entered into an Operating Agreement, including subsequent amendments or novations thereof.

104.    The Operating Agreement has the terms as set forth in Exhibit A to this Complaint.

105.    Plaintiff IMC has performed its obligations under the agreement and to the extent it has not performed in any way, it has been excused from doing so because of the prior breach by Defendants, unclean hands of Defendants, or because of the doctrine of estoppel.

106.    Defendants FE and CR are alter egos and successors in interest to one another.

107.    Defendants Robert Radovan and William Criswell are alter egos and successors in interest to Defendants FE and CR.

108.    Defendants Lisa Pacey and Heather Hill are employees of Defendants FE and CR who were assigned to act on behalf of and as agents of the Company.

109.    Defendants, acting as agents of one another, made the representations as set forth above, including misrepresentations regarding the formation and operation of the Company, misrepresentations of expertise in the operation of a winery, misrepresentations regarding the use of funds contributed to the Company, concealing the misappropriation of Company funds for the benefit of FE and CR, concealing that payments were used by the Company to pay the Defendants, and concealing how the governmental approvals and licenses were being obtained.

110.    Plaintiff relied upon and was harmed by these misrepresentations by granting Defendants a 40% interest in the Company, in contributing additional funds to the Company, and in permitting Defendants to continue to have access and control over the Company.

111.    As a result Plaintiff IMC and the Company have been harmed and injunctive relief is

1   necessary to prevent further irreparable harm.

2                               SIXTH CLAIM

3                           Economic Interference

4                           Against All Defendants

5   112.    All prior allegations are hereby incorporated by reference to the extent necessary to state a

6       Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be

7       pled in the alternative.

8   113.    Defendants know about the contractual and economic relationships between or made on

9       behalf of Plaintiff IMC and the Company with lenders, vendors, clients, consultants, and others.

10  114.    Defendants have through intentional and wrongful conduct, including breach of contract,

11      breach of duty of loyalty, breach of duty of care, misrepresentations, and unfair business

12      practices sought to disrupt these economic relationships through their conduct as set forth above.

13  115.    Defendants have and are imminently threatening the disruption of these economic

14      relationships.

15  116.    As a result, Plaintiff IMC and the Company have been damaged and require injunctive relief

16      to prevent any further threatened disruption of economic relationships.

17                             SEVENTH CLAIM

18                        Unfair Business Practices

19                          Against All Defendants

20  117.    All prior allegations are hereby incorporated by reference to the extent necessary to state a

21      Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be

22      pled in the alternative.

23  118.    The above conducts constitutes an unfair business practice and Plaintiff IMC seeks a return

24      of all property improperly obtained by Defendants, all property improperly distributed to

25      Defendants, and an injunction preventing Defendants from continuing the present conduct.

26  ///

27  ///

EIGHTH CLAIM

Declaratory Relief

Against Fairwinds Estate, LLC; Criswell Radovan, LLC; Robert Radovan; William Criswell

119.     All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

120.     Plaintiff IMC and Defendant FE entered into an Operating Agreement, including subsequent amendments or novations thereof.

121.     Plaintiff IMC contends that the Operating Agreement has the terms as set forth in Exhibit A to this Complaint.

122.     Defendants contend they are not bound by the Operating Agreement attached as Exhibit A.

123.     Plaintiff IMC contends that it properly issued Additional Interests to existing Member IMC pursuant to the terms of the Operating Agreement and agreement of members holding 60% or greater interest in the Company.

124.     Defendants contend that Plaintiff IMC may not issue Additional Interests to existing members without the express consent of Defendant FE.

125.     Plaintiff IMC contends that it properly invoked the dispute resolution mechanism in Article 15 by demanding mediation of disputes.

126.     Defendants contend that they may require Plaintiff IMC to agree to sell Company Property prior to agreeing to mediation.

127.     Plaintiff IMC contends that under the Operating Agreement—after providing notice that additional capital contributions from Defendant FE were needed to pay off the funds due under the Tebo note, and after FE refused to provide additional capital contributions—Plaintiff IMC or an affiliate of Plaintiff IMC may purchase the Tebo note to protect Plaintiff IMC's interest in the Company and the Property assets from foreclosure.

128.     Defendants contend that Plaintiff may not purchase the Tebo note without the permission of Defendants.  Instead, Defendants contend that Defendants may force Plaintiff IMC to agree to

1    sell the Property and risk foreclosure and loss of Plaintiff's investment.

2    129.    Plaintiff IMC and Defendant FE entered into a Services Agreement.  Plaintiff IMC contends

3    that the Services Agreement has the terms as set forth in Exhibit B to this Complaint.

4    130.    Plaintiff IMC contends that under the Operating Agreement, Defendants may not place

5    Company contracts or governmental approvals and permits in the name of Defendant FE.

6    Plaintiff IMC contends that under the Services Agreement Defendants may not place Company

7    contracts or governmental approvals and permits in the name of Defendant FE or exercise

8    control over the Winery Permits in a manner that excludes the Company or Brandon Chaney.

9    Plaintiff IMC contends that Defendants must cooperate with and provide all necessary authority

10   for Company employees and managers to perform company business in connection with the

11   Winery Permits or any contracts with Winery clients.  Specifically, that Defendants must take

12   whatever action is necessary to permit and allow Brandon Chaney and Plaintiff IMC to directly

13   work with the consultants and regulators concerning the winery business of the Company.

14   131.    Defendants contend that they may place Company permits and contracts in their own name

15   and interfere with the Company's ability to pay or otherwise work with consultants and clients

16   with respect to the Winery Permits or contracts with Winery Clients.

17   132.    Plaintiff IMC contends that the wrongful conduct of Defendants Robert Radovan, William

18   Criswell, Heather Hill, and Lisa Pacey, as set forth above, justifies and requires the removal for

19   cause of Defendant Robert Radovan as a Manager of the Company and that Defendant FE, with

20   the approval of Plaintiff IMC, should appoint a qualified Manager to fulfill the management

21   duties of Defendant FE under the Operating Agreement.

22   133.    Defendants contend that Defendant Robert Radovan should remain as a Manager of the

23   Company.

24   134.    Plaintiff IMC contends that, as Manager of the Company, it should have access to all

25   documents and accounts related to the Company.

26   135.    Defendants content that Plaintiff IMC should not have access to accounts that were set up to

27   manage the affairs of the Company that Defendants combined with the account of other entities.

136.    Plaintiff IMC contends that, as Manager of the Company, because Defendants have entered contracts and conducted business of the Company under the name of Defendant FE, Plaintiff IMC should have access to all documents and bank accounts under the name of Defendant FE that have had any transactions involving any client or vendor of the Company.

137.    Defendants contend that Plaintiff IMC should not have access to accounts that were set up to in the name of Defendant FE even if those accounts were used in connection with the Company's business operations.

138.    Plaintiff IMC contends that Defendants may not obtain a loan based upon Defendants' interest in the Company because doing so would be a violation of the Rabobank security agreement and further harm the Company and Plaintiff IMC's interest in the Company.

139.    Defendants contend they may seek out loans based upon Defendants' interest in the Company.

EIGHTH CLAIM

Accounting

Against All Defendants

140.    All prior allegations are hereby incorporated by reference to the extent necessary to state a Claim.  Any allegations herein inconsistent with prior allegations are explicitly intended to be pled in the alternative.

141.    The parties have entered into the agreements and transactions alleged above.

142.    An accounting would show the amount of Defendants' liability to Plaintiff IMC, the Company, and others under the agreements and transactions.

143.    An accounting would be an efficient means of determining the amount of the liability because the number of accounts and calculations are complicated such that an ordinary action for a fixed sum may be impracticable.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for trial by jury and judgment as follows:

1.  For general and specific compensatory damages according to proof, and estimated to be not less

than $4,000,000 against all Defendants.

2.  For declaratory relief.

3.  For an accounting.

4.  For punitive or exemplary damages.

5.  For a constructive trust.

6.  For partial or total subordination of any Defendants' interest in the Property or Company.

7.  For injunctive relief.

8.  For compensation in the amount of unjust enrichment or in quantum meruit.

9.  For restitution.

10. For interest

11. For costs of suit.

12. For such other and further relief as the court may deem proper, including attorneys fees.


Dated:                                        LOSCH & EHRLICH




                            By:   /s/ Ronald K. Losch
                                  Ronald K. Losch
                                  Mark R. Meyer
                                  Attorneys for Plaintiff IMC